## SYMONDS v. UNION INSURANCE COMPANY. (b)

### Marine insurance.—Total loss.

If a vessel be prevented, by a blockading squadron, from entering any of the enumerated ports, the voyage is broken up, and the assured may abandon, and recover for a total loss.

Insurance was effected by the plaintiff, who was the owner of a vessel, on her freight and cargo, by separate policies, " at and from New York to Cape François, with liberty to proceed to another port, should Cape François be blockaded ;" the vessel sailed from New York, with instructions where to proceed, if she could not enter Cape François ; she was prevented from entering that port, or any other designated in the instructions given to the master, and was obliged by the blockading force to go to another place, where the master disposed of the goods and invested the proceeds in a return-cargo, with which the ship returned to New York : *Held,* that the insured might abandon, and recover as for a total loss.

THE plaintiff had effected, at the office of the defendants, three policies of insurance, dated the 12th of September 1803. The first on the schooner Diana, Nicholas, master, valued at $4500; the second, on the freight of the schooner, valued at $1500, and the third, on her cargo, valued at $4000 ; on a voyage, " at and from New York to Cape François, with liberty to proceed to another port, should Cape François be blockaded, and the vessel prevented entering that port, from that, or any other cause, and at and from thence, back to New York." The order for the insurance declared, "that

---

(b) s. c. 1 W. C. C. 382.

Symonds v. Union Insurance Co.

the assured is not to abandon, if she cannot enter the Cape, from blockade or other cause, but liberty is given to proceed to some other port."

The schooner sailed from New York, on the 19th of September 1803, with instructions " to proceed to Cape François ; and if she could not enter, from blockade or other cause, to steer towards the Bite of Leogane, and enter either into Port-au-Prince, or some other port in the bite." On the 8th of October, she was boarded, off the island of St. Domingo, by an officer from the Blanche, a British frigate, who sent her papers on board the Bellerophon, another British ship of war. On the next day, Captain Nicholas was taken on board the Bellerophon, and was informed, " that the island of St. Domingo was blockaded by an English squadron, in consequence of which, no vessel would be permitted to enter any port or harbor in the said island ;" and, to that effect, the register and papers of the schooner were indorsed. It appeared also from the master's testimony, " that he was told, he was not permitted to proceed on his intended voyage, nor to go to Cuba, but should proceed down to Kingston, Jamaica ; that he was ordered to keep near the frigate Desire, until they had cleared the island of St. Domingo ; that on his arrival at Kingston, he was also told by the custom-house officers, that he could not *clear out for Cuba, whither he was [*418 still desirous of going ; and that, finally, the cargo was landed and sold at Kingston. The proceeds were then invested in another cargo, with which the ship returned to New York. On her arrival there, about the 17th of December 1803, the plaintiff abandoned the cargo and freight to the defendants, and claimed as for a total loss ; to recover which (deducting the proceeds of the cargo, and accounting for the profits on the investment homeward), the present action was instituted.

On the trial of the cause, these grounds of defence were taken ; 1st. That upon the specific terms of the contract, the assured had not a right to abandon. The consequence of being turned aside by a blockading force was contemplated by the parties, but not insured against ; for the voyage insured was to the Cape, or to another unblockaded port of Hispaniola. The whole island being blockaded, another port must be sought at the risk of the assured ; the conduct of the British being neither capture, nor arrest ; but simply precaution, to prevent a breach of blockade. 2d. That on general principles, it is not a case of abandonment for a total loss. The cargo was not prevented from arriving at its place of destination, by any risk insured against, acting upon the subject insured immediately, and not circuitously. There has been no capture, with a view to condemnation ; no arrest, for the purpose of an embargo, in the service of a foreign prince ; the cargo remains specifically the same ; the ship has returned ; wages have been paid, and of course, freight has been earned ; nothing, in short, has affected the voyage insured, but the act of preventing a breach of blockade, and the low state of the Kingston market ; and for neither of these is the underwriter liable. 2 Marsh. 434; 2 Burr. 1198; 1 T. R. 187; 2 Marsh. 482; 2 Burr. 696; 3 Atk. 195; 2 Str. 849; 2 Marsh. 496; Doug. 219; 1 Esp. 237; 3 Bos. & Pul. 388; 5 Esp. 50; Mill. 305–6; 5 East 388.

The answer, for the *plaintiff*, was, in general, that the voyage insured had been destroyed, by the superior force of a foreign power ; and that, in-

Conframp v. Bunel.

dependent of the means taken to prevent a breach of the blockade, the vessel had been constrained, against the express desire of the master, to proceed to a particular port, in exclusion of every other.

And THE COURT, in the charge to the jury, declared the law to be clearly with the plaintiff ; on which, a verdict was found in his favor for the goods and freight, at the value insured, subject to a deduction of the proceeds of the homeward investment.

*Rawle*, for the plaintiff.  *Dallas*, for the defendant.